**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LIENY SOLANO RODA,

      Petitioner,

v.                                                                          No. 2:26-cv-00612-MLG-GBW

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security;
PAMELA BONDI, Attorney General of the
United States; MARY DE ANDA-YBARRA,
Field Office Director of the El Paso Field
Office of U.S. Immigration and Customs
Enforcement, Enforcement and Removal
Operations; and DORA CASTRO, Warden
of the Otero County Processing Center, in
their official capacities,

      Respondents.

**ORDER DENYING PETITIONER'S MOTION
FOR TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Petitioner Lieny Solano Roda's Emergency Motion for Temporary Restraining Order ("Motion for TRO"), Doc. 6. Solano Roda seeks the same relief that she requests in her Petition for Writ of Habeas Corpus ("Petition"): immediate release from her continued detention, or, in the alternative, a prompt bond hearing pursuant to 8 U.S.C. § 1226. *Compare* Doc. 1 at 15-16 *with* Doc. 6 at 9. The United States Attorney's Office for the District of New Mexico ("USAO") filed its response to the Motion for TRO, Doc. 11, and Solano Roda filed her reply, Doc. 12, on March 17, 2026. Having considered the parties' briefing and relevant law, the Court denies the Motion for TRO.

"To obtain a restraining order, the movant must show '(1) a substantial likelihood of success on the merits, (2) irreparable injury in the absence of the injunction, (3) its threatened

1

injury outweighs the harm to the opposing party under the injunction, and (4) the injunction is not adverse to the public interest.'" *Cortez-Gonzalez v. Noem*, No. 2:25-CV-00985-MLG-KK, 2025 WL 3485771, at *2 (D.N.M. Dec. 4, 2025) (quoting *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1139 n.2 (10th Cir. 2017)). But where, as here, a temporary restraining order would mandate action, would change the status quo, and would grant all the requested relief, the moving party must make a heightened showing that the "likelihood-of-success and balance-of-harms factors tilt in her favor." *Cortez-Gonzalez*, 2025 WL 3485771, at *2 (internal quotation marks and citation omitted); *see also Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (explaining that a preliminary injunction is disfavored when "(1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win" (internal quotation marks and citation omitted)).

Solano Roda fails to demonstrate that there is a substantial likelihood she will succeed on the merits of her claim. She argues that she is "likely to prevail on her claim that her detention is governed by 8 U.S.C. § 1226(a) and that she is entitled to an individualized bond hearing." Doc. 6 at 5. She asserts that "[t]he mandatory detention framework of § 1225 does not extend to long-settled individuals apprehended within the interior of the United States, and finding otherwise would nullify the separate detention scheme Congress established in § 1226(a)." *Id.*

But as noted by the Court in its March 16, 2026, Order, Doc. 10, it appears Solano Roda's detention is governed by 8 U.S.C. § 1225(b)(2). Doc. 10 at 2-3. Based on Solano Roda's filings, she was deemed to be an "arriving alien" and placed in removal proceedings pursuant to Section 240 of the Immigration and Naturalization Act ("INA") on the same day she entered the United States. *See* Doc. 1-4 at 2 (indicating that Solano Roda was deemed an "arriving alien" and applicant for admission, and she was immediately placed in § 1229 removal proceedings). An "arriving

alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry," which is the case here. *See* Doc. 1 at 5 (stating that Solano Roda "was inspected and paroled into the United States through Brownsville, Texas Port of Entry"); 8 C.F.R. § 1.2 (defining "arriving alien"); § 1225(a)(1) (providing that an arriving alien "shall be deemed for purposes of this chapter an applicant for admission"). "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a . . . ." § 1225(b)(2). In accordance with § 1225(b)(2), the Department of Homeland Security charged Solano Roda as being inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), and placed her in removal proceedings under § 1229. Doc. 1-4 at 5.

It appears she was then granted parole for a little over six months: from the date of her entry on October 5, 2024, to April 18, 2025. Doc. 1-4 at 6. Critically, the parole Solano Roda received under § 1182(d)(5)(A)[1] "permits a noncitizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the noncitizen 'as if stopped at the border.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citation omitted) (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020)); *see also* 8 C.F.R. § 1.2 (providing that "[a]n arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)], and even after any such parole is terminated or revoked"). The Secretary of Homeland Security has discretion to revoke such parole, and upon revocation, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to

---

[1] The only exception to § 1225(b)(2)(A)'s mandatory detention provision is parole under § 1182(d)(5)(A). *See, e.g.*, *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025).

be dealt with in the same manner as that of any other applicant for admission to the United States." § 1182(d)(5)(A). This form of parole is not the same parole afforded by § 1226. *See, e.g.*, *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484-85 (S.D.N.Y. 2025) (explaining the differences between parole under § 1225 and § 1226). Accordingly, although Solano Roda was paroled into the United States pursuant to § 1182(d)(5)(A), she remained an "arriving alien" and her detention therefore appears to be governed by § 1225(b)(2)(A). Given this, Solano Roda is not eligible for a bond hearing under § 1226.

The remainder of Solano Roda's argument is premised on the idea that "courts may examine whether [parole] revocation rests on some individualized and articulable basis rather than categorical enforcement action" "[w]here parole revocation functions as the sole mechanism transforming an individual's custody posture from potentially discretionary detention under § 1226 to mandatory detention under § 1225(b)." Doc. 6 at 6. As already discussed, though, Solano Roda has been treated as an "arriving alien" and an "applicant for admission" since she came to the United States. *See* Doc. 1-4 at 5. Federal Respondents' decision to parole her into the country under § 1182(d)(5)(A), and any subsequent decision to revoke that parole, did not affect what statutory provision governs her detention. To the extent Solano Roda argues her detention is "constitutionally infirm" due to a lack of consideration of factors such as her flight risk or dangerousness, it is unclear from the Motion for TRO that she is entitled to such a hearing because she does not cite any legal authority supporting her position. *See* Doc. 6 at 6. Additionally, according to Solano Roda's I-94 record, her parole ended on April 18, 2025—long before she was detained on January 14, 2026. Doc. 1-4 at 6; Doc. 1 at 1-2.

4

For these reasons, Solano Roda has not demonstrated that there is a substantial likelihood she will succeed on the merits of her claim that her detention is governed by § 1226. The Motion for TRO, Doc. 6, is denied.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA